# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings Under Chapter 7 |
| KLASI PROPERTIES, LLC,<br>　　　　Debtor(s). | Case No. 12-60013 |
| ROBERT T. BRUEGGE, Trustee of<br>the Estate of Klasi Properties, LLC,<br>　　　　Plaintiff(s),<br>　　v.<br>FARMERS STATE BANK OF HOFFMAN<br>　　　　Defendant(s). | Adversary No. 12-6028 |

## OPINION

Plaintiff Robert Bruegge, as Trustee of the Estate of Klasi Properties, LLC ("Plaintiff"), filed an adversary complaint pursuant to 11 U.S.C. § 554(a)(3) and §11 of the Illinois Conveyances Act (765 ILCS 5/11) seeking to avoid the mortgage of defendant Farmers State Bank of Hoffman ("Defendant"). The complaint alleges that the Defendant's mortgage is insufficient pursuant to Illinois law to provide constructive notice to a bona fide purchaser of the Defendant's interest and, therefore, may be avoided. This matter is before the Court on the parties' cross-motions for summary judgment on the complaint.

## FACTS

Debtor Klasi Properties, LLC ("Debtor") filed a petition under Chapter 7 of the Bankruptcy Code on January 18, 2012. At the time of filing, the Debtor owned certain real estate and improvements located at 426 West Broadway, Centralia, Illinois (the "Property").

1

Defendant is a creditor and party in interest in this case by virtue of a promissory note executed June 17, 2005 (the "Note"), and asserts a lien against the property pursuant to a Commercial Real Estate Mortgage (the "Mortgage") also dated June 17, 2005. There is no dispute that the mortgage was recorded in the office of the Marion County Illinois Clerk and Recorder on June 22, 2005. The mortgage includes a legal description of the property and states that it is a purchase money mortgage securing a principal indebtedness of $75,000. The mortgage also includes the following two clauses:

> **INDEBTEDNESS**. This mortgage secures the principal amount shown above as may be evidenced by a promissory note or notes of even, prior, or subsequent date hereto, including future advances and every other indebtedness of every kind now and or later owing from Mortgagor to Lender however created or arising, whether primary, secondary, or contingent, together with all interest or charges provided in or arising out of such indebtedness, as well as the agreements and covenants of this Mortgage and all Related Documents (and referred to in this Mortgage as the Indebtedness).
>
> **RELATED DOCUMENTS.** The words "Related Documents" means all promissory notes, security agreements, prior mortgages, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and all other documents and agreements executed in connection with this Mortgage, whether now or later existing. The Related Documents are made a part of this Mortgage, with the same force and effect as if they were fully set forth herein.

*Plaintiff's Complaint,* Exhibit A, pp. 1-2. It is undisputed that the mortgage does not state on its face the interest rate or maturity date of the underlying indebtedness. However, this information is included in the underlying note. The note also specifically states that it is secured by a mortgage on the Property.[1]

On February 3, 2012, Defendant filed a Motion for Relief from Stay and Abandonment. The Trustee objected to the motion, but the matter was resolved prior to trial. An agreed order

---

[1] The Note states: "This note is secured by the rights and interests granted to Lender in the following security documents: Real Estate Mortgage dated 6/17/2005 covering real property located at 426 West Broadway, Centralia, IL 62801."

2

was entered May 9, 2012, in which the Trustee agreed to entry of an order lifting the automatic stay in order to allow Defendant to commence foreclosure proceedings. However, pursuant to the parties' agreement, the property was not abandoned. Instead, the agreed order provided that any remaining sale proceeds, after payment of all amounts due the Defendant and satisfaction of any other liens, would be paid to the Trustee. The Defendant subsequently initiated a foreclosure action in Marion County Circuit Court and named the Plaintiff as a party defendant. While the Plaintiff entered his appearance in that action, he did not answer or otherwise respond to the complaint.

On August 20, 2012, the Plaintiff filed the instant adversary complaint to avoid Defendant's mortgage pursuant to 11 U.S.C. § 544(a)(3). The Trustee asserts that the Defendant's mortgage on the property fails to comply with the requirements of § 11 of the Illinois Conveyances Act and, therefore, is invalid as to a bona fide purchaser such as the Trustee. Specifically, the Plaintiff maintains that two facial deficiencies--the lack of a stated interest rate and maturity date--"remove [the mortgage] from the statutory protection of a mortgagee's interest vis-à-vis a good faith purchaser." *Trustee's Second Amended Memorandum of Law in Support of Motion for Summary Judgment* at p. 5. The Plaintiff has moved for summary judgment on the complaint.

Defendant has also filed a motion for summary judgment. It contends that contrary to the Trustee's assertions, applicable law does not require recitation of the interest rate and maturity date on the face of the mortgage. It also affirmatively argues that by consenting to relief from the stay and failing to respond to the state court foreclosure complaint, the Plaintiff is now judicially estopped from challenging the Defendant's mortgage.

**DISCUSSION**

The Court begins its discussion with the issue that is common to both motions—whether the Trustee may avoid the Defendant's mortgage pursuant to 11 U.S.C. § 544(a)(3).

Section 544(a)(3) of the Bankruptcy Code confers on the Trustee at the commencement of the bankruptcy case, "the hypothetical status, rights and powers of a bona fide purchaser of real property who has perfected the transfer of real property from the debtor at the time of the bankruptcy filing." *In re Berg,* 387 B.R. 524, 559 (Bankr. N.D. Ill. 2008). Section 544(a)(3) states:

> (a)  The Trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–
> * * *
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). Hence, the trustee may avoid any transfer of the debtor's property that a hypothetical bona fide purchaser could avoid, "without regard to any knowledge of the trustee or of any creditor." *Id.*

Under Illinois law, a bona fide purchaser is "one who acquires an interest in property for valuable consideration without actual or constructive notice of another adverse interest in the property." *In re Polo Builders, Inc.*, 433 B.R. 700, 707 (Bankr. N.D. Ill. 2010), *quoting Goldberg v. Ehrlich (In re Ehrlich)*, 59 B.R. 646, 650 (Bankr. N.D. Ill. 1986). By the express terms of § 544(a)(3), a trustee cannot be charged with actual notice.[2] However, the trustee cannot

---

[2]The statute confers the rights of a bona fide purchaser "without regard to any knowledge of the trustee." 11 U.S.C. § 544(a)(3). *See also Belise v. Plunkett*, 877 F.2d 512, 514, n. 2 (Section 544(a) "specifies that the trustee shall be treated as a person without actual notice.").

avoid an interest under § 544(a)(3) of which he or she has constructive notice. *In re Sandy Ridge Oil Co., Inc.*, 807 F.2d 1332 (7th Cir. 1986).

Constructive notice is "notice that is deemed to be provided by an instrument of conveyance that is both sufficient in substance and properly recorded in the statutory office designated to maintain land title records for the county in which the subject real estate is located." *Shara Manning Properties*, 475 B.R. 898, 906 (Bankr. C.D. Ill. 2010). Constructive notice can take two forms: record notice and inquiry notice.[3] *Ehrlich*, 59 B.R. at 650; *Polo Builders*, 433 B.R. at 707; *In re Bulgarea*, 2010 WL 3614278 (Bankr. N.D. Ill. 2010); *US Bank Nat. Ass'n v. Villasenor*, 2012 WL 4761748 (Ill. App. 1st Dist, Oct. 5, 2012); *LaSalle v. Ferone*, 384 Ill. App. 3d 239, 245, 892 N.E.2d 585, 591, 322 Ill. Dec. 948, 954 (2nd Dist. 2008). Record notice "imputes to a purchaser knowledge that could be gained from an examination of the grantor-grantee index in the office of the Recorder of Deeds, as well as the probate, circuit, and county court records for the county in which the land is situated." *Ehrlich*, 59 B.R. at 650. It is axiomatic in Illinois that a purchaser of land "has a duty to examine the record of the chain of title and is chargeable with notice of whatever is shown by that record. Even if he fails to search the real estate records and is without actual knowledge of a prior properly recorded instrument, the subsequent transferee is deemed to be on notice of the instrument by operation of the principal of constructive notice." *Ehrlich*, 59 B.R. at 650, *citing Clark v. Leavitt*, 335 Ill. 184, 190, 166 N.E. 538, 540-41 (1929).

Inquiry notice, on the other hand, charges to a purchaser knowledge of facts that a diligent inquiry would have revealed. *Miller v. Bullington*, 381 Ill. 238, 243, 44 N.E.2d 850, 852

---

[3] The Trustee argues that "constructive notice" means record notice only and that principles of inquiry notice are inapplicable. *See Reply Memorandum in Support of Trustee's Motion for Summary Judgment and Memorandum in Opposition to Motion for Summary Judgment Filed by Farmers State Bank of Hoffman* (Doc. #24) at p. 9. This interpretation is contrary to the weight of authority in Illinois.

5

(1942). *See also Davis v. Elite Mortgage Services, Inc.*, 592 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009) ("[u]nder the doctrine of constructive notice, the law imputes to a buyer or lien claimant knowledge of the facts that a diligent inquiry would have brought to light."); *Source Once Mortgage Services Corp. v. Jones*, 1994 WL 13664 at *4 ("[i]nquiry notice, a form of constructive notice, encompasses all facts that a diligent inquiry would have brought to light."). The type of notice chargeable to a Trustee in bankruptcy was recently discussed in *In re Heaver*, 473 B.R. 734 (Bankr. N.D. Ill. 2012). In examining the interplay of actual, constructive and inquiry notice, the court explained:

> In Illinois, one 'having notice of facts which would put a prudent man on inquiry is chargeable with knowledge of other facts which he might have discovered by diligent inquiry. Whatever is notice enough to excite attention and put the party on his guard is notice of everything to which such inquiry might have led and every unusual circumstance is a ground of suspicion and demands investigation. . . . However, because Section 544(a) of the Bankruptcy Code specifically gives the trustee avoidance powers 'without regard to any knowledge of the trustee or of any creditor,' in order for 'inquiry notice' to apply the Trustee would have to have had constructive knowledge of the facts that would have supposedly put him on inquiry, without regard to actual knowledge. This means that some types of facts that would create inquiry notice under state law would not create constructive notice under bankruptcy law. For example, in *La Salle Bank*[4], the Illinois court found that the bank was put on inquiry notice that the man they intended to lend money to might not own the home intended to serve as collateral when the woman in possession of the house told the bank's appraiser that she owned the home. However a bankruptcy trustee would not have been on inquiry notice in such a situation because statements to a particular creditor would have to be disregarded. In contrast, *since purchasers are deemed to have constructive knowledge of the contents of duly recorded instruments within the chain of title in the grantor-grantee index, facts within such documents may be sufficient to put the Trustee on inquiry notice to the extent apparent on the face of the document.*

*Id.* at 741 (internal citations omitted) (emphasis added). Whether a recorded instrument is sufficient to impart constructive notice of a prior interest depends upon the quantum of information contained within the document and whether that information is sufficient to place a reasonable person on notice of the prior interest.

---

[4]*LaSalle Bank v. Ferone*, 384 Ill. App. 3d 239, 892 N.E.2d 585, 322 Ill. Dec. 948 (2nd Dist. 2008).

Here, there is no dispute that the Defendant's mortgage was duly recorded in the Marion County, Illinois Recorder's office on June 22, 2005, and that the mortgage appears in the chain of title.[5]  Hence, the Trustee had record notice of the mortgage.  The issue then becomes whether the mortgage is "sufficient in substance" under state law to impart constructive notice to the Trustee.

Section 11 of the Conveyances Act sets forth the statutory form for mortgages in Illinois.  It states, in pertinent part, as follows:

> §11 Mortgages of lands may be in substantially the following form:
>
> The Mortgagor (here insert name or names), mortgages and warrants to (here insert name or names of mortgagee or mortgagees), to secure the payment of (here recite the nature and amount of indebtedness, showing when due and the rate of interest, and whether secured by note or otherwise), the following described real estate (here insert description thereof), situated in the County of . . ., in the State of Illinois.
>
> Dated (insert date):
>
> (signature of mortgagor or mortgagors) . . . .

765 ILCS 5/11 (2011).  The Trustee maintains that provisions of § 11 are mandatory and, therefore, the Defendant's failure to include the interest rate and maturity date of the indebtedness on the face of the mortgage renders the instrument "woefully deficient" and insufficient to provide constructive notice to a bona fide purchaser without actual knowledge.  *Plaintiff's Second Amended Memorandum of Law in Support of Motion for Summary Judgment* at p. 10.  This Court disagrees.

Statutory analysis should always start with the plain meaning of the words in question.  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  Courts must assume that the words in a

---

[5] In order to be "properly recorded" for purposes of constructive notice, the recorded mortgage must be in the chain of title. *In re Heaver*, 473 B.R. 734, 737-38 (Bankr. N.D. Ill. 2012).

7

statute mean what they say and say what they mean. *Bedroc Ltd., LLC v. United States*, 541 U.S. 176, 183, 124 S. Ct. 1587, 1594 (2004). Where the language is unambiguous, courts need look no further than the statute itself. *Id*. Here, § 11 of the Conveyances Act clearly states that a mortgage "may" follow the specified form. It is a basic tenet of statutory construction that the word "may" is permissive and not mandatory. *Estate of Ahmed*, 322 Ill. App. 3d 741, 746, 750 N.E.2d 278, 281, 255 Ill. Dec. 697, 700 (1st Dist. 2001) (the word "may" is permissive, as opposed to mandatory); *Anderson v. Financial Matters, Inc.*, 285 Ill. App. 3d 123, 135, 672 N.E.2d 1261, 1269, 220 Ill. Dec. 249, 257 (2nd Dist. 1996) ("As a rule of statutory construction, the word 'may' is permissive or discretional as opposed to mandatory."). *See also Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("use of the permissive 'may'. . . contrasts with the legislators' use of a mandatory 'shall' in the very same section."). Therefore, based on the express and unambiguous language of §11, this Court concludes that its provisions are permissive and that failure to include all of the specified terms--such as the interest rate or the maturity date-- is not necessarily fatal to the mortgage.

This conclusion is buttressed by the fact that the Illinois General Assembly recently passed legislation clarifying § 11 of the Conveyances Act.[6] Under the new version of the statute, the present text of § 11 remains unchanged and is enumerated as subparagraph (a). Senate Bill 0016 then adds the following language to § 11:

> **(b) The provisions of subsection (a) regarding the form of a mortgage <u>are, and have always been, permissive and not mandatory.</u>** Accordingly, the failure of an otherwise lawfully executed and recorded mortgage to be in the form described in subsection (a) in one or more respects, including the failure to state the interest rate or maturity date, or both, shall not affect the validity or priority of the mortgage, nor shall its recordation be ineffective for notice purposes regardless of when the mortgage was recorded.

---

[6] As of the date of this Opinion, the bill had not yet been signed. However, it was sent to the Governor for signature on December 11, 2012. If enacted, the Act takes effect June 1, 2013.

S.B. 0016, 97th Gen. Assem. (Ill. 2012) (emphasis added). This amendment clarifies that § 11 is, in fact, permissive, has always been permissive, and the failure to include all of the information referenced in the statute does not invalidate such mortgage as to a bona fide purchaser.[7]

Even if § 11 is read to require recitation of the interest rate and maturity date, the mortgage in question included these terms by reference to the underlying promissory note. It is well established under Illinois law that "when a note and mortgage given to secure it mutually refer to each other, they must be construed together." *Metro Life Ins. Co. v. Kobbeman*, 260 Ill. App. 508, 512, 1931 WL 2961 ( 2nd Dist. 1931). *See also In re Bailey*, 999 F.2d 237, 241 (7th Cir. 1993) ("Illinois adheres to the general rule that in construing a mortgage, courts should look at all instruments executed by the parties in the course of the transaction.").

The concept of incorporation by reference was addressed in *Provident Federal Savings and Loan Ass'n v. Realty Centre, Ltd.*, 101 Ill. App. 3d 277, 428 N.E.2d 170, 56 Ill. Dec. 851 (3rd Dist. 1981), *aff'd* 97 Ill.2d 187, 454 N.E.2d 249, 73 Ill. Dec. 389 (1983) . In that case, the promissory note contained a "due-on-sale" clause which stated that if the real estate securing the note was transferred without the creditor's consent, the creditor was entitled to increase the interest rate or declare the entire balance of the note due. This clause was not included on the face of the accompanying mortgage. However, the mortgage did include a provision which specifically stated that it incorporated the terms of the unrecorded promissory note. In rejecting a subsequent challenge to the due-on-sale clause, the court noted that the test was "whether the language of one instrument was such as to bring its terms clearly within the provisions of the

---

[7] The Court is aware of the fact that the Trustee's rights as a bona fide purchaser pursuant to § 544 vest upon commencement of the bankruptcy case and that subsequent changes in state law cannot affect the Trustee's status. *See In re Trujillo*, 378 B.R. 526, 538 (B.A.P. 6th Cir. 2007); *In re Hastings*, 353 B.R. 513, 518-19 (Bankr. E.D. Ky, 2006). However, in the instant case, the General Assembly has not *changed* § 11. Instead, the amendment simply clarifies the existing statute, which mirrors this Court's interpretation.

other instrument." *Id.* at 281, 428 N.E.2d at 173, 56 Ill. Dec. at 854. It concluded that "the language of the mortgage quite specifically incorporate[d] by reference the terms of the note, and subsequent purchasers would be put on inquiry as to the contents of the note so incorporated. Hence, . . . . the subsequent purchasers did have constructive notice of the due-on-sale clause." *Id. See also Wright v. Mr. Quick, Inc.*, 109 Ill. 2d. 236, 240, 486 N.E. 2d 908, 910, 93 Ill. Dec. 377 (1985) ("It is well established that one instrument can incorporate the terms of another. All that is required is an expression of the parties' intent to incorporate those terms."). In the instant case, the mortgage clearly stated on its face that the terms of the promissory note were incorporated by reference. The note included both the interest rate and the maturity date of the indebtedness. Reading the mortgage and note in tandem, this Court concludes that the Defendant's mortgage is in compliance with the requirements of § 11,[8] even under the Trustee's restrictive interpretation.

The Court is aware that this conclusion conflicts with two recent opinions. In *Richardson v. Gifford State Bank (In re Crane)*, 2012 WL 669595 (Bankr. C.D. Ill), the court ruled that the provisions of § 11 are mandatory and that a mortgage that fails to include the interest rate and maturity date is insufficient to provide constructive notice to the Chapter 7 Trustee as a

---

[8] The Court notes that, despite the Trustee's assertions to the contrary, the Defendant is not attempting to reform the mortgage. The purpose of reformation "is to change a written instrument by inserting some omitted provision or deleting some existing provision so that the document conforms to the original agreement of the parties." *Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864, 869, 885 N.E.2d 350, 355, 319 Ill. Dec. 79, 84 (1st Dist. 2008). "The existence of a factual mistake is a prerequisite for relief in a reformation action." *Id.* at 871, 885 N.E.2d at 356, 319 Ill. Dec. at 85. In incorporation by reference, the terms of the underlying document are not being *changed*, nor is there any type of mistake. It is, rather, merely a "method of making one document of any kind become part of another separate document by referring to the former in the latter, and declaring that the former shall be taken and considered as apart of the latter the same as if it were fully set out therein. BLACK'S LAW DICTIONARY 766-67 (6th ed. 1990).

Additionally, the Court notes that the culture of lending has evolved since the adoption of § 11. For instance, adjustable rate mortgages routinely incorporate by reference the mechanism by which to calculate the adjustable rate. Such mortgages often refer to a future published index. Given the nature of this type of interest rate, it would be impossible to definitively state it on the face of the mortgage.

hypothetical bona fide purchaser. *Id.* at *1.  In *Crane*, defendant Gifford State Bank claimed mortgage liens on several parcels of real estate owned by the debtors.  The Chapter 7 Trustee filed a complaint to avoid two of defendant's mortgages pursuant to 11 U.S.C. § 544(a)(3) on the grounds that the mortgages failed to provide constructive notice.  He argued that although the mortgages stated the amount of the indebtedness secured, they did not specify the interest rate or maturity date and, therefore, were insufficient as to a third party without notice.  The court, ruling in the Trustee's favor, concluded that "the provisions of 765 ILCS 5/11 are not permissive, but are rather required in order for a mortgage to provide constructive notice to a bona fide purchaser or a trustee in bankruptcy." *Id.* at *2.[9]

Similarly, in *Peoples National Bank, N.A. v. Jones, et. al (In re Jones)*, 482 B.R. 257 (S.D. Ill. 2012), the court found that a cross-collateralization clause in a mortgage that failed to describe the interest rate and date of maturity was ambiguous and "defective" as to a subsequent bona fide purchaser without notice.  In reversing this Court, the district court opined that "controlling Illinois law. . . requires a mortgage to describe the nature of the debt secured, amount secured, due date and interest rate. . . ." *Id.* at 263.[10]

There is authority which suggests, at least in dicta, that the provisions of § 11 are mandatory, *see e.g.*, *Caraway v. Sly*, 222 Ill. 203, 205. 78 N.E. 588, 589 (1906) ("section 11. . . requires that a mortgage in that form shall recite the nature and amount of the indebtedness,

---

[9] The *Crane* decision is currently on appeal to the United States District Court for the Central District of Illinois. *The Gifford State Bank v. Richardson (In re Crane)*, 2012 WL 669595 (Bankr. C.D. Ill. Feb. 29, 2012), *appeal docketed* No. 12-2146 (C.D. Ill. June 4, 2012).  It should be noted that the *Crane* opinion did not address the issue of incorporation by reference.  The mortgage in the instant case did contain all of the permissive terms of § 11 by incorporating the note by reference.

[10] Like *Crane*, the ruling in *Jones* is also on appeal. *Peoples Nat'l Bank v. Jones et. al.*, 482 B.R. 257 (S.D. Ill. 2012), *appeal docketed* No. 12-3079 (7th Cir. Sept. 10, 2012).  It should be noted that in *Jones*, the second mortgage, which was held by the challenging bank, also did not reference an interest rate.  Thus, it appears that the District Court believed that the language of the first mortgage was ambiguous and ineffective notice for other reasons and did not necessarily deem the language of §11 mandatory.

showing when due and the rate of interest, and whether secured by note or otherwise."). However, it should be noted that prior to the court's ruling in *In re Crane*, none of the cases interpreting § 11 involved a situation where the mortgage was lacking solely the interest rate and/or maturity date.  Instead, in each of the reported cases, the mortgage in question also failed to state the amount of the indebtedness.  For instance, in *Bullock v. Battenhousen*, 108 Ill. 28, 1883 WL 10352 (Ill. 1883), which is cited by the Trustee, the Illinois Supreme Court held that a deed of trust that failed to state the amount secured was ineffective as to a *bona fide* purchaser without actual knowledge.  The Court stated:

> [t]he policy, *though not the letter*, of our statutes requires, in all cases, a statement upon the record of the amount secured. . . . A statement upon the record of the amount claimed to be due informs all what lien is claimed.  They know what they must contest, or subject to what they must take, in subsequently dealing with the property.  It prevents secret conspiracies between mortgagors and mortgagees as to the fact and amount of indebtedness to the detriment of subsequent purchasers and creditors.

*Bullock*, 1883 WL at *5 (emphasis added).   Here, anyone who reviews the record is aware of Defendant's lien against the property in an amount of no more than $75,000.  Hence, the Trustee had notice "as to the fact and amount of indebtedness."

Further, more recent authority even suggests that recitation of the indebtedness in the mortgage document may be unnecessary if the amount owed can be otherwise ascertained. As the court acknowledged in *In re Berg*, 387 B.R. 524, 560 (Bankr. N.D. Ill. 2008):

> Some opinions of Illinois courts post-*Bullock* have recognized some flexibility in reading the statutory requirements for an Illinois mortgage.  For example, it has been held that specifying the amount of indebtedness in the mortgage was unnecessary where the mortgage listed the interest rate, periodic interest payments and date of maturity so that one could calculate the principal amount; *Garnder*, 61 N.E. at 493;[11] where the mortgage secured future advances not to exceed the amount of indebtedness listed on the mortgage, *Skatch v. Gee*, 137 Ill. App. 3d 216, 91 Ill. Dec. 882, 484 N.E.2d 441, 443 (1985) and where the mortgage and

---

[11] *Gardner et. al. v. Cohen*, 61 N.E. 492 (Ill. 1901).

> note secured by it mutually refer to one another, *Bailey*, 999 F.2d at 242.[12] In other words, in those cases, the amount of mortgage lien was evident or calculable even though not specified, so third parties reading the recorded instrument were on notice of the mortgage debt.

*Id.* [13]

Based on the foregoing, it does not appear to this Court that § 11 was intended by the legislature to prescribe a "checklist" of formalistic mortgage requirements, especially in light of the recent amendment. Rather, its purpose was to create a *framework* for providing sufficient notice to innocent third parties of interests in property. As the court explained in *Shara Manning Properties, Inc.,* 475 B.R. at 910:

> Section 11 of the Conveyances Act is best interpreted as creating a *safe harbor* for mortgagees. A mortgage that *strictly* complies with section 11's outline for form and content is *'deemed' to be sufficient* and valid as against the mortgagor and, once recorded, as to third parties for constructive notice purposes. A mortgagee who deviates from section 11 *risks* losing that 'deemed' or automatic protection from challenges to the efficacy of its mortgage. But the risk that a defective mortgage will be judicially determined not to provide constructive notice to third parties is greater. . . than the risk that a mortgage will be determined to be so deficient as to be void *ab initio*.
> 
> \* \* \*
> 
> Illinois law is clear that while an error or omission in a recorded mortgage concerning the secured debt amount, maturity date, or interest rate, *may* deprive the mortgagee of the benefit of constructive notice, it does not necessarily invalidate the mortgage.

---

[12] *Matter of Bailey*, 999 F.2d 237 (7th Cir. 1993).

[13] It should also be noted that although the *Bullock* Court invalidated the mortgage in question as to a *bona fide* purchaser without actual knowledge, it distinguished the case from situations where the indebtedness was described by reference to another document. The Court stated:

> It may also be well to observe that the present case is in nowise analogous to cases wherein the debt is described by reference to another instrument. *In those cases there is only the labor of going to the other instrument, where full and reliable information can be attained.* It is fixed, and beyond evasion or perversion. But that is not the case where the reference is to an individual whose interest may be to misrepresent the truth, or who may not, with reasonable efforts, be found.

*Id* at \*6 (emphasis added). This language, too, suggests that even a mortgage that fails to state the principal amount of indebtedness on its face may still be sufficient to impart constructive notice where the information can be ascertained from referenced documents.

*Id*. (emphasis added). Obviously, a mortgage that includes all of the enumerated elements of § 11 is unassailable and provides constructive notice to a third party purchaser. However, this Court cannot say that a mortgage that fails to do so is *per se* deficient. Rather, the inquiry is whether the mortgage instrument contains sufficient information to put a third party on notice of the mortgage debt.

The Trustee would have this Court believe that there is some magical significance to the text of § 11 as opposed to operating as a suggested "safe harbor." It defies all logic to suggest that the language of § 544(a)(3) combined with § 11 allows a Trustee to bury his head when any minor non-compliance is found. This is especially true where, as here, the mortgage was recorded in the chain of title, and undisputedly identified the parties, provided a legal description of the mortgaged property, and set forth the amount and purpose of the indebtedness. It also referenced the corresponding loan documents and specifically provided that the terms of the promissory note were incorporated into the mortgage by reference. The Court believes that this information was sufficient to provide the Trustee with constructive notice of the Defendant's interest and, therefore, sufficient to overcome a challenge pursuant to 11 U.S.C. § 544(a)(3).[14]

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P 56(a). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). The Court finds that there are no material facts in dispute in this matter and that the Defendant is entitled to judgment as a matter

---

[14] This conclusion is also consistent with the purpose of 11 U.S.C. § 544(a)(3). It is generally accepted that the purpose of the Trustee's "strong arm" powers under § 544 is to "cut off unperfected security interests, secret liens and undisclosed prepetition claims against the debtor's property as of the commencement of the case." 5 COLLIER ON BANKRUPTCY ¶ 544.02[2] (2012); *In re Canney*, 284 F.3d 362, 374 (2nd Cir. 2002). There is no such clandestine interest in this case.

of law. Accordingly, for the reasons set forth above, the Defendant's Motion for Summary Judgment is granted and the Plaintiff's motion is denied.[15] A separate order shall issue.

ENTERED: January 18, 2013

                                            /s/ Laura K. Grandy
                                    UNITED STATES BANKRUPTCY JUDGE

---

[15] Because the Court finds in favor of the Defendant on the issue of avoidability, it need not address Defendant's other argument regarding waiver and estoppel.